## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MURTECH ENERGY SERVICES, LLC**,

                Plaintiff,

                                            No. 2:13-cv-12721

vs.                                       Hon. Gerald E. Rosen

**COMENCO SYSTEMS, INC., COMENCO
(HANGZHOU) ENVIRONMENTAL
EQUIPMENT CO., LTD.,** and **RAYMOND
HSU**,

                Defendants.

_____/

## OPINION AND ORDER REGARDING THE PARTIES' VARIOUS
## SERVICE OF PROCESS AND JURISDICTIONAL MOTIONS

## I. INTRODUCTION

Presently before the Court are several related motions concerning service of process and jurisdictional issues: (1) Defendants' Motion to Quash Service and for Dismissal for Lack of Personal Jurisdiction (Dkt. # 19); (2) Plaintiff's Motion to Conduct Personal Jurisdiction Discovery (Dkt. # 34); and (3) Defendants' Amended Motion to Quash Service (Dkt. # 37).[1]  All of these motions have been *copiously* briefed.  Without exhibits, the parties' submissions total over one

---

[1] Plaintiff also moves for leave to file a sur-reply (Dkt. #29), to which Defendants timely responded.  (Dkt. # 30).  The parties have also submitted and responded to supplemental authorities.  (Dkt. ## 33, 43, 46).  The Court hereby grants Plaintiff's Motion to file a sur-reply and takes notice of the various supplemental authorities.

hundred seventy pages.  That number jumps to just under one thousand pages when exhibits are included.[2]  Having reviewed and considered all of these materials and the entire record of this matter, the Court has determined that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Therefore, the Court will decide these matters "on the briefs."  See Eastern District of Michigan Local Rule 7.1(f)(2).  The Court's Opinion and Order is set forth below.

## II. PERTINENT FACTS

Plaintiff Murtech Energy Services, LLC (Murtech) provides a variety of business startup and commissioning, program management, and sales representation services to other companies.  (Plf's 2d. Am. Compl., Dkt. # 17, at ¶ 14).  Defendant ComEnCo Systems, Inc. (ComEnCo) designs and manufactures custom design industrial processes and HVAC equipment.  (*Id.* at ¶ 16). ComEnCo was one of Murtech's clients -- Murtech provided ComEnCo with sales forecasting, business planning, sales and marketing, and sales representation support.  (*Id.* at ¶ 15).  More specifically, Murtech became ComEnCo's exclusive sales representative for Ontario and Michigan in 2008.  (*Id.* at ¶ 19).  This sales

---

[2] The bulk of these exhibits just reproduce previously submitted pleadings and exhibits.  The parties are strongly urged to avoid such repetitive filings in the future, which only add needless paper to the record.  In short, a simple reference to a prior docket number will do.

representative agreement generally provided that ComEnCo would pay Murtech a monthly "support payment," plus sales commissions. (*Id.*). As part of this agreement, Murtech was to also create and manage a sales representative network to sell ComEnCo's products in six additional states or provinces, as well as in Mexico. (*Id.* at ¶ 20).

For reasons not important to the instant motions, this business relationship soured. Murtech has now commenced this litigation and claims that Defendants are liable for over $5.7 million in damages. In addition to ComEnCo, Murtech has named two other Defendants: ComEnCo (Hangzhou) Environmental Equipment Company, Ltd. (Hangzhou) and Raymond Hsu (Hsu). Hangzhou is a Chinese Corporation and is ComEnCo's wholly-owned subsidiary. Hsu is ComEnCo's president, and is also a corporate officer of Hangzhou.[3] He resides in Toronto and is a Canadian citizen.

Murtech's Second Amended Complaint pleads a variety of causes of action relating to four general issues: Defendants' failure to pay the monthly support payments and commissions; Defendants' failure to cooperate in setting up the sales representative network; Defendants' failure to refer certain sales to Murtech; and Hsu's representations to Murtech that ComEnCo was in financial distress while at

---

[3] In one affidavit, Hsu takes the position that he is both President and Vice President of Hangzhou. (Ex. A to Defs' Resp., Dkt. # 19-2, at ¶¶ 2, 18). In another, he asserts that he is just the Vice President of Hangzhou. (Ex. B to Defs' Reply, Dkt. # 28-3, at ¶ 2).

the same time using ComEnco's corporate accounts to fund personal and family expenses. Accordingly, Murtech pleads eight different causes of action against Defendants: Breach of Contract; Action on Account; Breach of Michigan's Sale Representatives' Commissions Act; Tortious Interference with Prospective Economic Advantage; Unjust Enrichment; Fraud/Fraudulent Misrepresentation; Promissory Estoppel; and Piercing of the Corporate Veil.

In lieu of answering Murtech's Complaint, Defendants have filed two related motions. (Dkt. ## 19, 37). First, all three Defendants claim that Murtech has not properly effectuated service. Second, Defendants Hangzhou and Hsu (but not ComEnCo) assert that this Court does not have personal jurisdiction over them. In addition to responding to Defendants' motions, Murtech has also moved to conduct jurisdictional discovery. (Dkt. # 34). As set forth below, this Court finds that Murtech has sufficiently perfected service of process and that limited jurisdictional discovery is appropriate.

### III. DISCUSSION

#### A.    Service of Process

It is Murtech's burden to demonstrate proper service. *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996). Murtech initiated this action on June 20, 2013. (Plf's Compl., Dkt. #1). It amended its Complaint on July 2, 2013 in response to this Court's Show Cause Order (Plf's Am. Compl., Dkt. # 7), and again on August 23,

4

2013 by stipulation of the parties.  (Plf's 2d. Am. Compl., Dkt. # 17).  Murtech attempted to effectuate service on three separate occasions: (1) personally upon Hsu in June 2013 during a previously scheduled meeting between the parties in Troy, Michigan; (2) via international mail in August 2013 to ComEnCo's headquarters in Ontario, Canada; and (3) personally upon Hsu, ComEnCo, and Hangzhou, as well as via mail to the Chinese Central Authority for Hangzhou in November 2013.  All three Defendants request that this Court quash these service efforts as improper.  They first claim that Murtech accomplished the June 2013 service by trickery -- under the guise of luring Hsu to a meeting in Michigan for no other purpose than service.  Defendants further claim that Murtech's second attempt did not comply with the Hague Convention's procedures governing international service of process and that the third should be quashed because the first so tainted every other attempt.  As set forth below, the Court is satisfied that Murtech has met its burden to demonstrate proper service.  It does so in some detail given that the service issues presented are more nuanced than developed by the parties' respective papers.

**1.    June Service of Process**

Defendants claim that Murtech lured Hsu to Michigan on June 24, 2013 for the sole purpose of effectuating service under the guise of a meeting to discuss outstanding debts related to a project with General Motors.  When Hsu arrived at

this meeting -- which Murtech insisted occur in Troy, Michigan instead of their usual meeting place in Windsor, Canada -- he was escorted to a conference room and then served with the Complaint personally and on behalf of both companies. (Ex. A to Defs' Mtn., Dkt. # 19-2, at ¶¶ 9-13).  Murtech's counsel then advised Hsu that Murtech would dismiss this litigation in exchange for monetary and other consideration.  (*Id.* at ¶ 14).  Unsurprisingly, Murtech vigorously disputes that the meeting was just a ruse to effectuate service and insists the meeting and service was proper.  (Exs. 2 & 3 to Plf's Resp., Dkt. ## 27-3, 27-4).

The Sixth Circuit has not addressed the parameters in which a district court should quash a summons on the theory that a plaintiff accomplished service by ruse or trick.  Other courts across the country and more specifically, courts in this district, have adopted a "bright-line" rule in situations where one party enters a jurisdiction for the purpose of engaging in settlement discussions or attending a proper business meeting and is then served with process.  *See, e.g.*, *Voice Sys. Mktg Co. v. Appropriate Tech. Corp.*, 153 F.R.D. 117 (E.D. Mich. 1994) (Gadola, J.); *K Mart Corp. v. Gen-Star Indus. Co.*, 110 F.R.D. 310 (E.D. Mich. 1986) (Cohn, J.).  In *K Mart*, for example, Judge Cohn noted that judicial economy and good-faith settlement discussions dictate "a flat prohibition on service in such cases unless the plaintiff *warns* the defendant before he enters the jurisdiction that he may subject himself to process, or else when settlement talks fail the plaintiff

6

must give the defendant *an opportunity to leave the jurisdiction* before service is made." 110 F.R.D. at 313.  Judge Cohn reasoned as follows:

> Such a rule avoids inherently difficult determinations as to who initiated meetings, who relied on statements made by whom, and whether the plaintiff engaged in good faith settlement.  Such a bright-line rule promotes good faith settlement, is efficient from a judicial standpoint, and serves to distance the courts from the possibility of trickery.  A bright-line rule also obviates a determination of whether the plaintiff intended to file a complaint at the time the parties were arranging the settlement meeting.

*Id.*  In short, such a rule "avoid[s] . . . the unpleasant and often impossible task of judging the inevitable swearing matches about who said what to whom."  *Id.* at 314 (citation omitted).

This last observation especially rings true in this matter as the parties vigorously dispute the facts leading up to the June 24, 2013 meeting.  At the least, it is clear that Cliff Murray, one of Murtech's members, emailed Hsu on June 19, 2013 at 5:25pm requesting that the meeting be moved from Windsor, Ontario to Troy, Michigan to accommodate Murtech's travel schedule -- Murtech had scheduled a meeting (possibly at Hsu's request) for earlier that morning with General Motors in Flint.  (Ex. B to Defs' Mtn., Dkt. # 19-3).  Murtech's counsel filed its eight-count, one-hundred forty paragraph Complaint less than 15 hours later at 8:17 am the very next morning.  (Plf's Compl., Dkt. # 1).  Murtech provided no warning that it would serve Hsu with process four days later at a meeting its counsel contemporaneously characterized as one "to discuss the status

7

of the ComEnCo/Murtech contract and past due charges." (Ex. A to Defs' Reply, Dkt. # 28-2). Nor did Murtech afford Hsu an opportunity to leave before service was made. Accordingly, for these reasons and those set forth by Judge Cohn in *K Mart*, the Court will quash Murtech's June 24, 2013 service.

The Court will not, however, grant Defendants' request to dismiss Murtech's Complaint with prejudice.[4] It is this Court's general practice regarding improper service of process motions to permit a plaintiff to cure a procedural deficiency. *Stern v. Beer*, 200 F.2d 794, 795 (6th Cir. 1952) ("[I]f the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later."); *see also* 5B Charles Alan Wright, et. al., Federal Practice & Procedure § 1354 (3d ed. 2014) (noting that when federal courts quash service, they generally "retain the case" if the plaintiff is likely to effectuate proper service in the future). Defendants have put forth no compelling reason to dismiss Murtech's Complaint with prejudice solely on the basis of its alleged service by trickery. And, as set forth below, Murtech has sufficiently cured its service deficiencies.

---

[4] Defendants take inconsistent positions on this, admitting at one point in their papers that service by trickery requires dismissal "albeit without prejudice." (Defs' Resp., Dkt. # 30, at 2).

8

## 2.      September Service of Process

On August 28, 2013, Murtech's counsel sent Defendants the Summons and Second Amended Complaint via certified registered return-receipt mail to ComEnCo's headquarters in Ontario, Canada.  (Ex. 4 to Plf's Resp., Dkt. # 27-5). Diane DeMichele signed for this mail on September 4, 2013.  (Dkt. ## 24-26). Murtech asserts that DeMichele is ComEnCo's office manager and reports directly to Hsu.  (Ex. 2 to Plf's Resp., Dkt. # 27-3, at ¶ 14; Ex. 3 to Plf's Resp., Dkt. # 27-4, at ¶ 11).  Defendants contest this, claiming that DeMichele has no managerial duties and that she is "not authorized or otherwise empowered to accept service on behalf of Comenco, [Hangzhou], or [Hsu.]"  (Ex. B to Defs' Reply, Dkt. # 28-3, at ¶¶ 6-7).  They also note that she is not an employee of Hangzhou.  (*Id.* at ¶ 6).

As the parties recognize, the Federal Rules of Civil Procedure allow for service of international corporations and individuals outside of the United States. *See* Fed. R. Civ. P. 4(f), (h)(2).  These provisions generally permit service of foreign individuals and corporations "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).  The United States, Canada, and China are signatories to the Hague Convention.  The Hague Convention was "intended to provide a simpler way to serve process abroad, to assure that defendants sued in

foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698 (1988). It provides several different methods of service. First, each signatory designates a "Central Authority," which in turn either serves the documents or facilitates their service through another party. *Id.* at 699. Second, it provides a variety of alternative methods of effectuating service in lieu of using the Central Authority, as long as the receiving state does not object. *Id.*

Two of these alternative methods are applicable to Murtech's September service of process: (a) Article 10(a) allows for "the freedom to send judicial documents, by postal channels, directly to persons abroad;"[5] and (b) Article 19 allows for service consistent with "the internal law of a Contracting State . . . for service within its territory." The issue then becomes whether Murtech's service by mail to ComEnCo's Ontario headquarters was proper under Article 10(a) and/or Canadian law. Whether service was proper under Article 10(a) and/or Canadian law presents far more complicated questions than discussed in the parties'

---

[5] Importantly, while Canada does not object to Article 10, China does. *See* Hague Convention Table Reflecting Applicability of Articles, http://www.hcch.net/upload/applicability14e.pdf. Defendants take the position that in order to determine whether a country objects, courts must look to "the service laws of that country to determine whether the method of service utilized would be valid in that country." (Defs' Reply, Dkt. # 28, at 4) (citing *In re Hunt's Pier Associates*, 156 B.R. 464, 470 (Bankr. E.D. Pa. 1993)). Defendants have put forth no binding Sixth Circuit authority on this issue and did not discuss Canada's clear position -- that it does not object to Article 10. Even if Defendants' view is correct, the Court's determination below moots this issue.

respective pleadings.

As to Article 10(a), the Sixth Circuit has not addressed whether Article 10(a) permits service of process by certified mail.  District courts within the Sixth Circuit have taken contrasting views.  Some interpret Article 10(a) narrowly and find that it does not allow service by certified mail by focusing on its use of the word "send" (as opposed to "service," which is a term that is used throughout the Hague Convention -- including in Articles 10(b) and 10(c)).  *See, e.g.*, *Uppendahl v. Am. Honda Motor Co.*, 291 F. Supp. 2d 531 (W.D. Ky. 2003).  Others have turned to the Hague Convention's history, interpretative guidance from the State Department, and other provisions to more liberally construe the Article to allow service by certified mail.  *See Rae Grp., Inc. v. AIESEC Int'l*, 2008 WL 4642849, at *2-3 (E.D. Mich. Oct. 20, 2008) (Roberts, J.).  This split is replicated outside of the Sixth Circuit.  *See Brockmeyer v. May*, 383 F.3d 798, 801-03 (9th Cir. 2004) (discussing circuit split); *see also The Knit With v. Knitting Fever, Inc.*, 2010 WL 2788203, at *6 & n.4 (E.D. Pa. July 13, 2010) (collecting authorities).

As to Article 19's interplay with Canadian law, Ontario Rule of Civil Procedure 16.01 provides that "[a]n originating process shall be served personally as provided in rule 16.02 or by an alternative to personal service as provided in rule 16.03."  Ontario Rule of Civil Procedure Rule 16.03 provides several alternative methods, including as pertinent here:

11

(4) Service by Mail to Last Known Address. Service of a document may be made by sending a copy of the document together with an acknowledgment of receipt card (Form 16A) by mail to the last known address of the person to be served, but service by mail under this subrule is only effective as of the date the sender receives the card.

\* \* \*

(6) Service on a Corporation. Where the head office, registered office or principal place of business of a corporation or, in the case of an extra-provincial corporation, the attorney for service in Ontario cannot be found at the last address recorded with the Ministry of Consumer and Commercial Relations, service may be made on the corporation by mailing a copy of the document to the corporation or to the attorney for service in Ontario, as the case may be, at that address.

Unfortunately, neither party discussed two intricacies of these provisions and rather just focused on whether Murtech properly accomplished personal service (Defs' Reply, Dkt. # 28, at 4-7)[6] and whether Article 10(a) permits service by mail. (Plf's Sur-Reply, Dkt. # 29-2, at 5-7).[7]

---

[6] Defendants also emphasize that DeMichele was not authorized to accept service on behalf of the three Defendants. Because personal service is not an issue with respect to the September service of process, this is a non-issue. And, Murtech's counter here -- that Michigan service of process laws permit service "on a . . . person in charge of the office as well as sending a summons and a copy of the complaint by registered mail, addressed to the principal of the office of the corporation" -- is disingenuous and inapplicable. (Plf's Sur-Reply, Dkt. # 29-2, at 6-7) (citing *J & J Sports Prods., Inc. v. Washington*, 2013 WL 1701008, at *3 (E.D. Mich. Apr. 18, 2013) (Borman, J.)). First, Murtech omits reference to the personal service requirement in Michigan Court Rule 2.105(D)(2). Second, as set forth above, the Hague Convention governs service issues, not the Michigan Court Rules.

[7] Admittedly, there is support for the notion that "Canada has expressly declined to object 'to service by postal channels.'" (Plf's Sur-Reply, Dkt. # 29-2, at 5-6 (citing

12

First, it is not clear to this Court whether Ontario Rule of Civil Procedure 16's general authorization of service by mail falls within Article 19. The entire language of Article 19 is as follows:

> To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

One district court within the Sixth Circuit has concluded that this language "leaves intact internal laws that permit 'methods of transmission . . . coming from abroad.'" *Humble v. Gill*, 2009 WL 151668, at *3 (W.D. Ky. Jan. 22, 2009) (citing Article 19). In *Humble*, the court examined Article 19 and held that "[i]t does not transform internal methods of intrastate service into methods of interstate service. . . . [B]ecause Ontario Rule of Civil Procedure 16 does not authorize the use of registered mail for *international service of process* in Canada, . . . [one cannot] show[] that his service was proper under internal Canadian law for purposes of Article 19" by using international mail to effectuate service. *Id.*; *see also In re Mak Petroleum, Inc.*, 424 B.R. at 919 (agreeing with *Humble* and further noting that Ontario's Rule governing "service across international borders . . .

---

*Fernandez v. Univan Leasing*, 15 A.D. 3d 343, 344-45 (N.Y. App. Div. 2d 2005)). But this is by far from a settled issue. *In re Mak Petroleum, Inc.*, 424 B.R. 912, 919 (Bankr. M.D. Fla. 2010) (concluding that Canada's express declarations "relate only to 'service' of *subsequent documents* after the initial service of process has been effected, as intended by the context of Article 10(a)") (emphasis added).

13

appears to reflect Canada's preference for the procedures established by the Hague Convention. . . . [I]t would be anomalous for other internal Canadian law to permit foreign parties to serve Canadian residents by mail, without regard to the procedures set forth in the Convention."). Other courts outside the Sixth Circuit have interpreted Article 19 more broadly, allowing service by international mail. *See, e.g., Johnson v. PPI Tech. Servs., L.P.,* 2012 WL 4971078, at *2 (E.D. La. Oct. 17, 2012) (collecting cases).

Second, Murtech's service of Hangzhou and Hsu by mail to ComEnCo's Ontario headquarters is suspect. As to Hangzhou, the record is silent as to whether ComEnCo's headquarters was also Hangzhou's "head office, registered office or principal place of business" as required by Ontario Rule of Civil Procedure 16.03(6). And because Hsu is a person, Murtech was required to effectuate service at his last known address together with an acknowledgment of receipt card under Ontario Rule of Civil Procedure 16.03(4). The record is again silent on these on these points.[8]

Given that these legal and factual issues are not sufficiently presented by the

---

[8] To the extent Defendants claim that Murtech's September service of process attempt was invalid because it was not directed at their counsel, Defendants' counsel received electronic service of both Murtech's Second Amended Complaint -- a filing, the Court notes, that was done pursuant to Defendants' consent (Dkt. # 16) -- and the certificates of service after they appeared on behalf of Defendants. *See generally, Eastern District of Michigan Electronic Filing Policies and Procedures*.

parties' respective submissions, and more importantly, given that Murtech sufficiently cured its service issues in November 2013, the Court finds that it is unnecessary to determine whether Murtech's September service of process was proper.

### 3.   November Service of Process

On November 4, 2013, Murtech's process server went to Hsu's home in Ontario, Canada.  (Ex. 1 to Plf's Supp. Authority, Dkt. # 33-2, at ¶¶ 6, 9).  A man in his 20s or 30s answered the door.  (*Id.* at ¶ 10).  Though Hsu was visible from the door, the man denied that Hsu was in the home.  (*Id.* at ¶¶ 10-11).  The man also did not let Murtech's process server leave the papers with him.  (*Id.* at ¶ 12).  So the process server left the summons and the Second Amended Complaint in a sealed envelope addressed to Hsu inside the door.  (*Id.* at ¶ 12).  He then mailed a copy to Hsu the next day.  (*Id.* at ¶ 14).  On November 18, 2013, another process server personally handed Hsu copies of the Second Amended Complaint and the summons for ComEnCo and Hangzhou while Hsu was in Ontario, Canada.  (Ex. 2 to Plf's Supp. Authority, Dkt. # 33-3, at ¶¶ 2-3).  The next day, Murtech's counsel also mailed the appropriate materials to the Chinese Central Authority.  (Ex. 3 to Plf's Supp. Authority, Dkt. # 33-4).

It is clear that Murtech's November 2013 service of process cured any service problems that occurred in June and September 2013.  To the corporations,

Murtech has met its burden to show that it properly served Hangzhou and ComEnCo. Ontario Rule of Civil Procedure 16.02(1)(c) permits personal service for corporations "by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business." Hsu admits that he is a corporate officer of both corporations and does not dispute his personal service.[9] While Defendants hint that Hangzhou's status as a Chinese corporation mandates sole use of the Chinese Central Authority, the Hague Convention applies based upon the country in which service occurs, not a corporation's citizenship. *Marcantonio v. Primorsk Shipping Corp.,* 206 F. Supp. 2d 54, 58 (D. Mass. 2002). Even so, Murtech also commenced service through the Chinese Central Authority. The Court is satisfied that these efforts satisfy the Hague Convention.

Murtech has also met its burden to show that it properly effectuated service on Hsu. Ontario Rule of Civil Procedure 16.03(5) expressly governs this situation:

Where an attempt is made to effect personal service at a person's

---

[9] Though Federal Rule of Civil Procedure 4(h)(2) permits foreign corporations outside the United States to be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i ) . . . [courts] have applied Rule 4(f)(2)(A) to approve service carried out in accordance with foreign law." *Brockmeyer*, 383 F.3d at 806; *see also Retractable Tech., Inc. v. Occupational & Med. Innovations, Ltd.*, 253 F.R.D. 404, 405 (E.D. Tex. 2008) ("Rule 4(f)(2)(A) allows personal service when foreign law specifically provides for personal service.").

place of residence and for any reason personal service cannot be
effected, the document may be served by,

    (a)    leaving a copy, in a sealed envelope addressed to
the person, at the place of residence with anyone
who appears to be an adult member of the same
household; and

    (b)    on the same day or the following day mailing
another copy of the document to the person at the
place of residence,

and service in this manner is effective on the fifth day after the
document is mailed.

It is clear that Murtech's process server complied with this procedure.

Finally, Defendants do not contend that the November service of process
was deficient. They instead argue that the June service of process tainted
Murtech's subsequent attempts. The Court is not aware of any case law extending
this quasi-"fruit of the poisonous tree" argument to this situation. Accordingly, the
Court will not deviate from its general practice of allowing a plaintiff to cure a
deficient service of process. *See also Rojek v. Catholic Charities, Inc.*, 2009 WL
3834013, at *3 (E.D. Mich. Nov. 16, 2009) (Rosen, C.J.) ("Courts have broad
discretion to dismiss an action that involves improper service. Nevertheless,
dismissal is not invariably required where service is ineffective -- under such
circumstances a court has discretion to either dismiss the action or quash service
but retain the case for proper service later.") (citation omitted).

In sum, the Court grants Defendants' motions to quash service in part, but

17

finds that Murtech has properly served Defendants.

**B.**     **Personal Jurisdiction**

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden of establishing jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002). "[P]ersonal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) (quotations omitted). Courts have three options when faced with motions under Federal Rule of Civil Procedure 12(b)(2): "(1) determine the motion[] based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion." *Intera Corp. v. Henderson,* 428 F.3d 605, 614 n.7 (6th Cir. 2005) (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989)). A district court has discretion as to which option it selects. *Id*

Plaintiff asserts that this Court has both general and specific jurisdiction over Hsu and Hangzhou. In the past year, the Supreme Court has emphasized the limited nature of federal jurisdiction in the context of both general and specific jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014); *Walden v. Fiore*, 134 S. Ct. 1115 (2014). These cases help frame the contours of this case.

18

In *Daimler*, Argentinian residents sued Daimler (a German company) in the Northern District of California for alleged human rights violations committed in Argentina by Daimler's Argentinian subsidiary, Mercedes-Benz Argentina.  134 S. Ct. at 751-52.  The residents predicated Daimler's personal jurisdiction upon the California contacts of one of its subsidiaries, MBUSA.  *Id.* at 751.  Holding that such contacts did not support general jurisdiction, the Supreme Court reiterated the narrow and exacting standard under which a court must examine an allegation of general jurisdiction:

> [O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there.  For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.  Those affiliations have the virtue of being unique -- that is, each ordinarily indicates only one place -- well as easily ascertainable.  These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Id.* at 760 (alterations and citations omitted).   Moreover, though an entity's "continuous and systematic" contacts may be so substantial so as to "render [it] essentially at home in the forum State," such contacts must be "*entirely distinct from those activities*" under which the instant cause of action arises.  *Id.* at 761 (citation omitted and emphasis added).

Applying these principles, the Supreme Court held that general jurisdiction

was not proper:

> Here, neither Daimler nor MBUSA is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* at 761-62 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

*Walden* involved the scope of specific jurisdiction. There, California and Nevada residents flew from Puerto Rico to Las Vegas, Nevada, with a layover at the Atlanta airport. 134 S. Ct. at 1119. They had almost $97,000 in cash in their carry-on bags (allegedly from gambling winnings). *Id.* A deputized DEA Agent seized the cash in Atlanta after an alleged positive hit by a drug-sniffing dog. *Id.* The agent eventually drafted an allegedly false affidavit of probable cause for forfeiture of the funds, but no forfeiture charges were ever filed and the DEA subsequently returned the funds. *Id.* The residents then filed a *Bivens* action against the agent in the District of Nevada asserting various Fourth Amendment violations. *Id.* at 1120.

In rejecting the Ninth Circuit's conclusion that jurisdiction was proper because the agent "expressly aimed" his conduct at Nevada "by submitting the affidavit with knowledge that it would affect persons with a 'significant

connection' to Nevada," the Supreme Court emphasized that "[t]he inquiry [as to] whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Id.* at 1121 (citation and quotations omitted). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 1122 (citation omitted). Stated differently, a plaintiff's contacts with a forum -- however significant -- cannot be "decisive in determining whether the defendant's due process rights are violated." *Id.* Second, the "'minimum contacts' analysis looks at the defendant's contacts with the forum State itself, not the defendant's contacts with the persons who reside there." *Id.* Therefore, emphasized the Court, a "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* Stated differently, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121.

Applying these principles, the Supreme Court held that the agent "formed no jurisdictionally relevant contacts with Nevada." *Id.* at 1124. None of the conduct occurred in Nevada and the agent never had any contact with anyone or anything in Nevada. *Id.* The Court also rejected the respondents' argument that they felt the effects of the agent's allegedly tortious conduct in Nevada:

> Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. *The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.*

*Id.* at 1125 (citing *Calder v. Jones*, 465 U.S. 783 (1984)) (emphasis added).

Both *Daimler* and *Walden* accentuate the need to *examine a defendant's contact with a particular forum* in order to evaluate *both* general and specific jurisdiction. Given these directives, and the record as it stands in this matter, this Court concludes that the best course of action is for the parties to engage in limited discovery on the issue of whether this Court has personal jurisdiction over Hangzhou and Hsu. *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995) ("[T]he written submissions raised disputed issues of fact with regard to cross-corporate entanglements. In order to resolve those issues, the district court should have allowed further discovery or held an evidentiary hearing."); *Victoria's Secret Stores Brand Mgmt., Inc. v. Bob's Stores LLC*, 2014 WL 1045994, at *2 (S.D. Ohio Mar. 17, 2014) (similar); *SFS Check, LLC v. First Bank of Delaware*, 2013 WL 2467921, at *3 (E.D. Mich. June 7, 2013) (Berg, J.) (similar); *Lindsey v. Cargotec USA, Inc.*, 2010 WL 3397355, at *2 (W.D. Ky. Aug. 26, 2010) (similar).

The Court will permit such discovery given that the record is sufficiently muddy in a number of areas related to application of Michigan's long-arm statute and Hangzhou and Hsu's due process rights. As to Hsu, Murtech has produced

some evidence that might support the assertion of jurisdiction: (1) he negotiated the 2008 exclusive sales representative agreement between Murtech and ComEnCo, which gave Murtech exclusive authority to represent ComEnCo in Michigan; (2) he has regularly communicated with Murtech's members since the execution of the agreement as ComEnCo's primary point of contact with Murtech via hundreds of emails and telephone calls regarding over one million dollars of business in Michigan; (3) he has attended at least ten meetings in Michigan with Murtech; and (4) he falsely represented to Murtech that ComEnCo was in financial distress, which caused Murtech to provide ComEnCo with funding for some of ComEnCo's current projects.[10]   (Ex. 2 to Plf's Resp., Dkt. # 27-3, at ¶¶ 12-13, 16-18; Ex. 3 to Plf's Resp., Dkt. # 27-4, at ¶¶ 3, 12-14, 18-19).  But the record is silent with respect to where the parties negotiated and signed the agreement, the *quality* -- not *quantity* -- of communications to and from Michigan, and the factual circumstances regarding his alleged false representations as they relate *to* Michigan.  Limited discovery can draw out these factual issues.

Citing out-of-circuit authority, Hsu argues that his "limited activity in Michigan on behalf of ComEnCo does not . . . engender personal jurisdiction in Michigan."  (Defs' Mtn., Dkt. # 19, at 28-29).  The problem with this "fiduciary

---

[10] Murtech alleges that at least some of ComEnCo's financial problems lay with Hsu's use of corporate accounts to fund his personal and family expenses.  (Ex. 2 to Plf's Resp., Dkt. # 27-3, at ¶ 16; Plf's 2d Am. Compl., Dkt. # 17, at ¶¶ 61-68).

shield doctrine" argument is that both the Sixth Circuit and Michigan state courts have rejected the doctrine's broad application that Hsu advances.  As the Sixth Circuit explained in *Balance Dynamics Corp. v. Schmitt Industries, Inc*:

> While it is true that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation," . . . the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants.  Hence, where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.,* whether [ ]he purposefully availed [him]self of the forum and the reasonable foreseeable consequences of that availment.

204 F.3d 683, 697-98 (6th Cir. 2000) (citations omitted); *see also W.H. Froh, Inc. v. Domanski,* 252 Mich. App. 220, 238 (2002) ("[T]he fiduciary shield doctrine does not constitute a valid argument against a Michigan court's exercise of personal jurisdiction over a nonresident individual defendant who otherwise falls within the scope of Michigan's long-arm statute.").  Whether Hsu has purposefully availed himself of this forum will be addressed after limited discovery.

As to Hangzhou, Murtech has produced evidence of a relationship between ComEnCo, Hsu, and Hangzhou, the scope of which is unclear.  On the one hand, Murtech generally lumps ComEnCo and Hangzhou together as one entity without specifically separating out the roles that each played and without clarifying which entity Hsu acted on behalf of with respect to Murtech's allegations.  On the other,

24

Murtech has shown that there is some corporate relationship between the two (one that Defendants apparently deny) and that this relationship may have led to Murtech attempting to establish a business relationship between Hangzhou and Ford's China and India operations, perhaps as part of its contractual obligations with ComEnCo. (Ex. 2 to Plf's Resp., Dkt. # 27-3, at ¶ 19; Ex. 3 to Plf's Resp., Dkt. # 27-4, at ¶¶ 16-17, 19; Ex. B to Defs' Reply, Dkt. # 28-3, at ¶¶ 15-16; Ex. 1 to Plf's Resp., Dkt # 46-1, at ¶ 7). One thing is clear at this point: this blurry relationship revolves around Hsu -- the scope of Hsu's contacts with Michigan *on behalf of Hangzhou* is likely the lynchpin on the issue of whether this Court has jurisdiction over Hangzhou. While Defendants have put forth some evidence indicating that Hangzhou does not have any contacts with this forum (Ex. A to Defs' Mtn., Dkt. # 19-2, at ¶¶ 19-21; Ex. B to Defs' Reply, Dkt. # 28-3, at ¶¶ 8, 13-14, 18-20), limited discovery will aid in developing the issue surrounding Hsu's nexus to Michigan with respect to ComEnCo and/or Hangzhou.[11]

The Court will therefore permit limited discovery as to Hsu and Hangzhou's contacts with the state of Michigan for a period of no more than sixty days after entry of this order. The Court declines to sanction Murtech's proposed discovery

---

[11] Murtech also advances a "reverse alter-ego theory" of personal jurisdiction, arguing that ComEnCo's contacts with Michigan are sufficient to establish jurisdiction over Hangzhou. While the Court remains skeptical of this theory, *see RMS Titanic, Inc. v. Zaller*, --- F. Supp. 2d. ---, 2013 WL 5675523, at *17 (N.D. Ga. Oct. 17, 2013), the Court will not address this issue until after the completion of jurisdictional discovery (if appropriate).

(or otherwise address Defendant's objections to the scope of this proposed discovery) at this time. The parties are directed to engage in the discovery process pursuant to those procedures set forth in Federal Rule of Civil Procedure 26, and with an eye towards the Supreme Court's guidance in *Daimler* and *Walden*. If a dispute arises during this limited window, the parties are directed to file an appropriate motion with this Court. Upon the completion of this limited discovery, Defendants may renew their motion if they so choose.

Finally, it is apparent that this matter is, to say the least, contentious. The Court is concerned that the tone of counsels' respective pleadings -- by referencing "ethical intimidation," "personal attacks," and "pounding counsel," and devoting a substantial number of briefing pages *and* exhibits to counsels' respective conduct -- indicates that they are bordering on conduct that runs afoul of this District's Civility Principles. The Court admonishes all counsel to review these Principles and to conduct themselves accordingly. *Eastern District of Michigan Civility Principles, Preamble*, available at http://www.mied.uscourts.gov/Rules/Plans/08-AO-009.pdf.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion to Quash Service and for Dismissal for Lack of Personal Jurisdiction (Dkt. # 19) is GRANTED IN

PART AND DENIED IN PART, WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply (Dkt. # 29) is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Motion to Conduct Personal Jurisdiction Discovery (Dkt. # 34) is GRANTED; and

IT IS FURTHER ORDERED that Defendants' Amended Motion to Quash Service (Dkt. # 37) is GRANTED IN PART AND DENIED IN PART, WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Dated:  June 24, 2014                    s/Gerald E. Rosen
                                         Chief, Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 24, 2014, by electronic and/or ordinary mail.

                                         s/Julie Owens
                                         Case Manager, (313) 234-5135